## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| LINNEA MARAVELL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:10-cv-455-GZS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether substantial evidence supports the commissioner's determination that the plaintiff had no medically determinable impairment. I recommend that the decision be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that, although the plaintiff alleged that she had attention deficit disorder ("ADD"), post-concussive syndrome, status-post blast trauma, headaches, and a sensory processing disorder, she had no medically determinable impairments, Finding 3, Record at 11; and that she, therefore, had not been under a

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on September 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

disability from June 6, 2008, her alleged date of onset of disability, through June 18, 2010, the date of the decision, Finding 4, *id*. at 14.[2] The Decision Review Board declined to disturb the decision, *see id*. at 1-3, thus making the decision the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

---

[2] The plaintiff was insured for SSD benefits through March 30, 2011, *see* Finding 1, Record at 11, subsequent to the date of the decision.

## I. Discussion

The plaintiff claimed that she became disabled as a result of injuries that occurred in 1996, when she worked in an office adjacent to a construction/blasting site. *See, e.g.*, Record at 152, 330. She stated that, in the wake of the blasting, she became extremely sensitive to sensory stimuli such as fluorescent lights, odors, and noises, impairing her concentration and attention to the point that, despite retrofitting her office, she was obliged to work extra hours to compensate for the distractions, leading her to quit that job in 2005 and causing her to become disabled from all work in 2008. *See, e.g., id.* at 24, 152, 174, 330.

She faults the administrative law judge for:

1. Rejecting the ADD diagnosis of a treating source, Rachel Burke, D.O., according no weight to Dr. Burke's residual functional capacity ("RFC") opinions, and ignoring a supporting opinion of a Disability Determination Services ("DDS") nonexamining consultant, Lewis F. Lester, Ph.D., *see* Plaintiff's Itemized Statement of Error ("Statement of Errors") (Docket No. 12) at 6-8;

2. Failing to assess Dr. Burke's opinions in light of evaluations conducted by Philip A. Morse, Ph.D., and Judith G. Kimball, Ph.D., OTR/L, FAOTA, *see id.* at 8-10; and

3. Reaching her Step 2 finding in an "unacceptable" way, *see id.* at 10-11.

I find no reversible error and, hence, recommend that the court affirm the decision.

With respect to the plaintiff's claimed mental impairments, the record contained (i) a report of a neuropsychological consultation dated May 5, 2003, by Dr. Morse, *see id.* at 231-48, (ii) a report of an examination by DDS consultant Roger Ginn, Ph.D., dated August 12, 2008, *see id.* at 255-57, (iii) a Psychiatric Review Technique Form ("PRTF") completed on September 16, 2008, by DDS nonexamining consultant Brenda Sawyer, Ph.D., *see id.* at 267-80, (iv) progress

notes from visits to Dr. Burke on November 14, 2008, and December 22, 2008, *see id*. at 281-82, 312-14, (v) a PRTF completed on January 28, 2009, by Dr. Lester, *see id*. at 283-96, (vi) Dr. Burke's opinions, dated January 15, 2010, as to the plaintiff's capacity to perform physical and mental work-related functions, *see id*. at 324-29, and (vii) an occupational therapy evaluation by Dr. Kimball dated January 23, 2010, *see id*. at 330-33.

The administrative law judge noted that Dr. Morse, whom she referred to as "the neuropsychologist," made no diagnosis. *See id*. at 12. She added:

> Despite the [plaintiff's] complaints of frequent distraction from noises, smells etc., she scored in the average to superior range on all tests administered including working memory, intelligence and achievement. In addition, the [plaintiff's] testing was consistent with intelligence tests she was given as a young adult, suggesting no loss of function over time. The neuropsychologist did note some deficiencies in multi-tasking and sustained concentration. However, any deficiencies could be overcome by the [plaintiff's] high average to superior functioning in all areas tested. It is noteworthy that the neuropsychologist did not diagnose any cognitive disorder.

*Id*. at 13 (citation omitted).

The administrative law judge observed that, during testing administered by Dr. Ginn, the plaintiff showed good persistence and concentration and achieved scores in the superior range of intellectual functioning. *See id*. She noted that Dr. Ginn had concluded that the plaintiff had no cognitive or emotional problems and had set forth no work-related limitations. *See id*.

The administrative law judge acknowledged Dr. Burke's ADD diagnosis but concluded that there was no medically determinable ADD impairment, reasoning:

> The [plaintiff] saw Dr. Rach[]el Burke once in November 2008. Based on the [plaintiff's] complaints, Dr. Burke diagnosed the [plaintiff] with Attention Deficit Disorder without hyperactivity and prescribed the medication Adderall. The [plaintiff] noted that she had not had a regular examination since 1996 and that a certified natural health practitioner provided her regular care. This diagnosis was made based on the [plaintiff's] subjective complaints without objective testing or corroborating reports. . . . The [plaintiff] does not take medications currently including the Adderall which was earlier prescribed[,] suggesting the [plaintiff's]

condition was either not correctly diagnosed or has disappeared.

*Id.* (citation omitted). She also rejected Dr. Burke's assessment of functional restrictions, stating that Dr. Burke was not the plaintiff's regular treatment provider, having seen her on only two occasions, and the limitations noted were based only on the plaintiff's subjective complaints. *See id.* at 13-14.

The administrative law judge acknowledged Dr. Kimball's diagnosis of sensory processing disorder but concluded there was no such medically determinable impairment, reasoning that (i) Dr. Kimball was not an "acceptable medical source" under relevant Social Security regulations and Social Security Ruling 06-03p ("SSR 06-03p"), (ii) Dr. Kimball had no treating or examining relationship with the plaintiff, (iii) there was no objective data to support the diagnosis, *i.e.*, no laboratory tests, no mental status evaluation, no physical examination, or any other source of objective data to establish that any disease existed, and (iv) the diagnosis appeared to be based solely on the plaintiff's subjective complaints. *See id.* at 12.

The administrative law judge made no mention of either the Sawyer PRTF, in which Dr. Sawyer concluded that the plaintiff had no medically determinable mental impairment, or the Lester PRTF, in which Dr. Lester concluded that she had medically determinable impairments of ADHD (attention deficit hyperactivity disorder) and anxiety disorder, but found them nonsevere. *See id.* at 12-14, 267, 283-84, 288, 295.

A Step 2 (severity) determination entails assessment of (i) whether a claimant has a medically determinable impairment, (ii) if so, whether that impairment reasonably could be expected to produce the alleged symptoms, and (iii) "once the requisite relationship between the medically determinable impairment(s) and the alleged symptom(s) is established, the intensity, persistence, and limiting effects of the symptom(s) . . . along with the objective medical and

other evidence[.]"  Social Security Ruling 96-3p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2011) ("SSR 96-3p"), at 117.

"No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms."  Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service,* Rulings 1983-1991 (Supp. 2011) ("SSR 96-7p"), at 133; *see also* 20 C.F.R. § 404.1508.

"Symptoms are [a claimant's] own description of [his or her] physical or mental impairment."  20 C.F.R. § 404.1528(a) (emphasis omitted).  A claimant's "statements alone are not enough to establish that there is a physical or mental impairment."  *Id.* (emphasis omitted). By contrast:

> Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms).  Signs must be shown by medically acceptable clinical diagnostic techniques.  Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception.  They must also be shown by observable facts that can be medically described and evaluated.

*Id.* § 404.1528(b).

As the plaintiff's counsel conceded at oral argument, Dr. Burke provided no objective testing or corroborating reports in support of her ADD diagnosis, seemingly basing her diagnosis on the plaintiff's subjective complaints.  The plaintiff complained to Dr. Burke on November 14, 2008, that she went "haywire" in 1996 from blastings, which had "destroyed [her] life[,]" had "neurosensory integration problems[,]" was "[s]ensory overloaded[,]" and needed to be "desensitized."  Record at 281 (internal quotation marks omitted).  Dr. Burke diagnosed ADD

without mention of hyperactivity and prescribed Adderall, but made no notation in the "objective" section of either her November 14, 2008, progress note, or a progress note of a sole follow-up visit on December 22, 2008, of observable signs of difficulty with attention and concentration. *See id*. at 281, 313. While, in her January 15, 2010, mental RFC opinion, she found some marked limitations, she did not note any "signs" of ADD in support of those limitations. *See id*. at 324-25. While, in her January 15, 2010, physical RFC opinion, she assessed restrictions based on overstimulation by environmental stimuli such as noise, vibration, fumes, odors, chemicals, and gases, she made clear that these were based on the plaintiff's self-report and, again, pointed to no signs or laboratory findings demonstrating the existence of an underlying medically determinable impairment. *See id*. at 328 ("Has hyperacusis *as a complaint*. Distracted + bothered by HVAC for example") (emphasis added), 329 ("Difficulty [with] neurosensory interaction per [patient] *self-reporting*.") (emphasis added).

In short, Dr. Burke identified no signs demonstrating the existence of ADD, defined as "a [disorder] of attention, organization and impulse control appearing in childhood and sometimes persisting to adulthood[,]" Stedman's Medical Dictionary 525 (27th ed. 2000), or any other medically determinable physical or mental impairment capable of causing the symptoms of which the plaintiff complained.[3]

---

[3] The plaintiff further complains that the administrative law judge erroneously concluded, based on the fact that Dr. Burke had seen her only twice, that Dr. Burke was not a "treating source" for purposes of 20 C.F.R. § 404.1527(d)(2). *See* Statement of Errors at 7-8. She cites *Johnson v. Astrue*, 597 F.3d 409, 411 (1st Cir. 2009), for the proposition that the true test is whether a provider has seen a patient sufficiently to provide an informed opinion. *See id*. The administrative law judge made the comments in question in the context of rejecting Dr. Burke's RFC opinions, *see* Record at 13-14, which she need not even have reached, having supportably concluded that the plaintiff did not have a medically determinable impairment, *see* 20 C.F.R. § 404.1508; SSR 96-7p at 133. Therefore, any error is harmless. In any event, I find no error in the handling of the Burke RFC opinions. The administrative law judge did not conclude that Dr. Burke was not a treating source, but rather that she was not a "regular" treating source, *see* Record at 13, a conclusion borne out by the record. She gave no weight to the RFC opinions based not only on the fact that Dr. Burke had seen the plaintiff only twice but also on the supportable conclusion that the limitations noted therein were based on the plaintiff's subjective complaints. *See id*. at 13-14. (*continued on next page*)

At oral argument, the plaintiff's counsel acknowledged that Dr. Burke's notes, standing

alone, do not support a finding of a medically determinable impairment of ADD. However, he

underscored, as argued by the plaintiff in her statement of errors, that the administrative law

judge failed to perceive "corroboration" of the ADD diagnosis in the reports of Drs. Morse and

Kimball and ignored the report of Dr. Lester, who indicated that the plaintiff suffered from

ADHD. *See* Statement of Errors at 6-10. He cited further support for the diagnosis in the form

of a notation in the physical examination report of DDS consultant Robert N. Phelps Jr., M.D.,

under the heading "Diagnosis," that the plaintiff had sustained a workplace exposure to the

effects of blasting as a result of which she suffered "from several neuropsych deficits which

include impaired sustained and aspects of divided attention, alternating attention, distractibility

and hypersensitivity to noise[,]" Record at 252. In view of the foregoing, the plaintiff argues,

"the overwhelming preponderance of the evidence in this case supports a finding that [she] has a

medically determinable impairment that significantly limits her ability to work." Statement of

Errors at 10. She elaborates:

> The basic problem in this case is that the ALJ failed to accurately consider and
> assess the evidence of record. [The plaintiff] was exposed to repeated episodes of
> blasting and, as a direct result, suffers from substantial deficits in the areas of
> attention and concentration. The specific diagnostic label attached to her
> impairment, *i.e*., ADHD or sensory processing disorder, is not critical. Rather,
> the ALJ committed serious error in finding that Plaintiff does not have a
> medically determinable impairment where, as here, multiple sources have
> reported a number of limitations due to [her] extreme distractibility.

---

These are good reasons for rejecting the opinion of a treating source. *See, e.g*., 20 C.F.R. § 404.1527(d)(2)(i)-(iii)
("Generally, the longer a treating source has treated [a claimant] and the more times [a claimant has] been seen by a
treating source, the more weight [the commissioner] will give to the source's medical opinion. . . . Generally, the
more knowledge a treating source has about [a claimant's] impairment(s) the more weight [the commissioner] will
give to the source's medical opinion. [The commissioner] will look at the treatment the source has provided and at
the kinds and extent of examinations and testing the source has performed or ordered . . . . The more a medical
source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more
weight [the commissioner] will give that opinion.").

*Id*.

However, there is a basic problem with the plaintiff's argument: under relevant rules and regulations, the existence of a specific medically determinable impairment is in fact critical to a finding of disability. *See, e.g*., 20 C.F.R. § 404.1508; SSR 96-7p at 133. The plaintiff falls short of demonstrating that the reports of Drs. Morse, Kimball, or Phelps corroborate a specific medically determinable impairment of ADD or that the administrative law judge's error in failing to address the PRTF of Dr. Lester is material.

While it is true that Dr. Morse did note observable signs of impairment or weakness in three areas of attention (sustained attention, aspects of divided attention, and alternating attention), adding that the plaintiff was "quite distractible (hypersensitive to noise, others)[,]" Record at 246, the administrative law judge accurately noted that he did not provide a diagnosis, for example, any diagnosis of cognitive impairment, *see id*. at 12-13, 245, 245-47, a seemingly significant omission.[4] In any event, it is not clear that Dr. Morse's observations corroborate Dr. Burke's diagnosis of ADD, which, as discussed above, is defined as a condition appearing in childhood. At oral argument, the plaintiff's counsel posited that deficits in attention and concentration are the "hallmarks" of ADD. However, he pointed to no medical evidence so stating.

To the extent that the plaintiff complains that the administrative law judge erred in finding that the deficiencies noted by Dr. Morse "could be overcome by the [plaintiff's] high average to superior functioning in all areas tested[,]" *see* Statement of Errors at 10-11, her point is well-taken. There is no record evidence that superior intelligence compensates for deficits in

---

[4] Dr. Morse indicated that the plaintiff complained of symptoms consistent with "persistent post-concussive syndrome" such as pain, fatigue, and reduced energy, but he did not go so far as to diagnose that impairment. *See* Record at 246.

attention and concentration, and that is not the sort of self-evident conclusion that a layperson, such as an administrative law judge, can draw. *See, e.g.*, *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1ˢᵗ Cir. 1990) (although administrative law judges are not precluded from "rendering common-sense judgments about functional capacity based on medical findings," they are "not qualified to assess residual functional capacity based on a bare medical record").

Nonetheless, as counsel for the commissioner rejoined at oral argument, the plaintiff wrongly describes this erroneous conclusion as "[t]he heart of the ALJ's decision[] rejecting [the plaintiff's] condition as a non medically determinable impairment at Step 2[.]"  Statement of Errors at 10.  The error was instead peripheral and harmless, given that (i) Dr. Morse himself offered no diagnosis, despite making the findings at issue, (ii) it is not clear that Dr. Morse's findings specifically support a diagnosis of ADD, and (iii) there is other evidence of record that the plaintiff had no medically determinable mental impairment, most notably the report of Dr. Ginn, on which the administrative law judge partly relied.  *See* Record at 256-57 (conclusion of Dr. Ginn that the plaintiff's "ability to use language or ability for social reasoning and judgment as well as abstract thinking is in the superior range.  Relatively speaking her ability for short-term memory is somewhat below that, but solidly in the average range.  [T]here do not appear to be any cognitive-related restrictions.").

Nor does the Kimball report corroborate Dr. Burke's ADD diagnosis.  First, Dr. Kimball attributed the restrictions she found to sensory processing disorder, not ADD.  *See id*. at 332-33. Second, the administrative law judge supportably found that Dr. Kimball's diagnosis and assessed restrictions appeared to be based on the plaintiff's subjective complaints.  *See id*. at 12, 330-31.  While Dr. Kimball mentioned that the plaintiff "took the Adolescent/Adult Sensory

Profile which did confirm what she reported[,]" *id.* at 332, she neither attached that document

nor offered any explanation of what it entailed or how it corroborated the plaintiff's self-report.

As counsel for the commissioner argued, it is neither self-evident, nor is there evidence of

record, that the referenced profile constitutes a "medically acceptable clinical diagnostic

technique[]" for the purpose of demonstrating the existence of psychological "signs." 20 C.F.R.

§ 404.1528(b).[5]

As counsel for the commissioner conceded at oral argument, the administrative law judge

erred in ignoring the PRTF of Dr. Lester, who found two medically determinable mental

impairments, one of which was ADHD. *See* Statement of Errors at 6-7; 20 C.F.R.

§ 404.1527(f)(2)(i)-(ii) (directing administrative law judges to "consider findings and other

opinions of State agency medical and psychological consultants and other program physicians,

psychologists, and other medical specialists as opinion evidence[,]" evaluate them using the

same factors used to assess treating source opinions, and explain the weight accorded them).

Nonetheless, as counsel for the commissioner argued, the error was harmless. Dr. Lester deemed

the plaintiff's mental impairments nonsevere. *See* Record at 295. Therefore, even had the

administrative law judge credited the Lester opinion, her analysis still would have ended at Step

2.[6]

---

[5] The plaintiff complains, in passing, that the administrative law judge erred in failing to accord weight to Dr. Kimball's opinions on the basis that Dr. Kimball did not have a treating or examining relationship with her. *See* Statement of Errors at 2; Record at 12. At oral argument, counsel for the commissioner conceded error with respect to the finding that Dr. Kimball was not a treating source. However, she argued that the administrative law judge otherwise offered good and sufficient reasons for rejecting Dr. Kimball's opinions, including that there was no evidence that Dr. Kimball had ever personally examined the plaintiff and that she appeared to base her findings solely on the plaintiff's subjective reports. *See* Record at 12. I agree. As discussed above, Dr. Kimball offered no "signs" in support of her diagnosis or findings of functional restrictions. Nor did she state in her report, or is it otherwise apparent, that she personally examined the plaintiff. *See id.* at 330-33.

[6] At oral argument, the plaintiff's counsel disputed the harmlessness of the error in the absence of any analysis by the administrative law judge of the credibility of the plaintiff's allegations. He contended that there is record evidence supporting a Step 2 severity finding, for example, Dr. Morse's statement that, "given [the plaintiff's]

(*continued on next page*)

Finally, nothing in Dr. Phelps' opinion reasonably evidences a medically determinable impairment of ADD. As the administrative law judge observed, Dr. Phelps found no abnormal findings on physical examination other than a required correction for vision, and identified no medically determinable impairment. *See id*. at 13, 249-53. The statement that he labeled a "Diagnosis" does not in fact contain a diagnosis and is not based on his own examination, instead seemingly summarizing findings made in Dr. Morse's report. *See id*. at 252. That is not surprising, in view of the fact that Dr. Phelps is an orthopedic surgeon, not a mental health expert, *see id*. at 253, and performed a physical, rather than mental, examination, *see id*. at 249.

To the extent that the plaintiff complains as a stand-alone matter of failures to credit RFC opinions offered by treating or examining sources, *see generally* Statement of Errors, I need not reach the merits of those arguments. Absent a medically determinable impairment, a claimant's alleged restrictions cannot form the basis of a disability finding. *See, e.g*., 20 C.F.R. § 404.1520a(b) (the finding of a medically determinable mental impairment triggers the need to assess the degree of functional limitation resulting from the impairment); SSR 96-7p at 133; *Rodriguez v. Secretary of Health & Human Servs*., No. 94-1868, 1995 WL 45781, at *4 n.14 (1st Cir. Feb. 7, 1995) ("If there is insufficient evidence that a mental impairment exists, there will . . . presumably be no medical findings which would allow the SSA to complete the standard

_____

pervasive level of distractibility with sound, vision and smell, it is very difficult to imagine any work environment that would be conducive for her." Record at 231. As I understand it, his argument is that, in the absence of a credibility assessment, and in view of record evidence supporting a Step 2 severity finding, one cannot prejudge whether the administrative law judge would have deemed the plaintiff's condition nonsevere had she reached that point in her analysis. Nonetheless, in the circumstances presented, I am comfortable deeming the error harmless. There is no PRTF of record by a DDS consultant finding a severe, medically determinable mental impairment. Dr. Lester, who had the benefit of review of the Morse and Ginn reports and Dr. Burke's note diagnosing ADD, deemed her impairments mild and nonsevere. *See id*. at 295. In addition, as counsel for the commissioner noted at oral argument, the administrative law judge went beyond the requisite Step 2 analysis, addressing and supportably rejecting the Burke RFC opinions, expressing skepticism that the plaintiff suffered functional impairment despite Dr. Morse's notations of deficits, and correctly noting that Dr. Ginn had found no work-related limitations. *See id*. at 13-14.

PRTF.").

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be

**AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 28th day of September, 2011.

<div style="margin-left:50%">

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

</div>